UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAQONDA HUMPHRIES, PO SHAN LEUNG, and CHRISTA TRABUCCO, individually and on behalf of those similarly situated,<br><br>Plaintiffs,<br>v.<br><br>MEDMINDER SYSTEMS, INC., and TROY L. HILSENROTH,<br><br>Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*   Civil Action No. 1:24-cv-10559-IT<br>*<br>*<br>*<br>*<br>*<br>* |

MEMORANDUM & ORDER

May 2, 2025

TALWANI, D.J.

Pending before the court is Plaintiffs Daqonda Humphries, Po Shan Leung, and Christa Trabucco's Motion for Step-One Notice [Doc. No. 44]. Plaintiffs ask the court to conditionally certify the following proposed collective so that their proposed notice may issue pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b): "All current and former hourly employees of Medminder employed to process prescriptions throughout the country who were not paid one and one-half times their regular hourly rate for hours worked over 40 in at least one workweek between March 6, 2021 and the present." Id. at 1; see also id., Ex. 1 (proposed Notice and Consent to Join Form). For the reasons stated below, the Motion is GRANTED.

I. **Relevant Background**

According to the [Second] Amended Complaint ("Complaint") [Doc. No. 32], Defendants Medminder Systems, Inc., and Troy L. Hilsenroth (collectively, "Medminder") operate a mail-order pharmacy in Norwood, Massachusetts. Id. ¶¶ 2, 12. Medminder employed Plaintiffs "to fill prescriptions at its Norwood facility." Id. ¶¶ 13–16. Plaintiffs, and their

proposed collective, were "subject[ed] . . . to the same policy of [Medminder] scheduling [them] for more than 40 hours in a workweek and then failing to pay them overtime wages." Id. ¶¶ 17–25.

According to declarations filed by Plaintiffs in support of their Motion, Plaintiffs were hired "to prepare prescriptions, which included counting pills, typing prescriptions, and handling medications throughout the process of filling prescriptions." Pls.' Mem. ISO Mot. to Certify ("Pls.' Mem."), Exs. A-C (Decl. of Daqonda Humphries ("Humphries Decl.") ¶ 3; Decl. of Christa Trabucco ("Trabucco Decl.") ¶ 3; Decl. of Po Shan Leung ("Leung Decl.") ¶ 3) [Doc. No. 45]. Humphries and Trabucco were hired as technicians; Leung was hired as a pharmacist. See id. "Medminder employs around 30 pharmacists and 30 technicians who are paid hourly who perform work similar to" Plaintiffs, and the "pharmacists and technicians who did similar work to [Plaintiffs] also would work more than 40 hours in a workweek for Medminder, but also would not be paid time and a half for overtime hours." Humphries Decl. ¶¶ 5–6; Trabucco Decl. ¶¶ 5–6; Leung Decl. ¶¶ 5–6.

## II.    Discussion

### A.    Standard of Review

Employees may bring collective actions under the FLSA on behalf of themselves and all other "similarly situated" employees. 29 U.S.C. § 216(b). The First Circuit has not prescribed a procedure for certification, but most courts take a two-step approach. Romero v. Clean Harbors Surface Rentals USA, Inc., 368 F. Supp. 3d 152, 161 (D. Mass. 2019). First, the court makes an initial determination of whether the potential collective members should receive notice of the pending action. Id. (citing Trezvant v. Fidelity Emp'r Servs. Corp., 434 F. Supp. 2d 40, 43 (D. Mass. 2006)). "This determination is made using a fairly lenient standard, which typically results

in conditional certification." Trezvant, 434 F. Supp. 2d at 43. At this stage, the plaintiff must show only "that there is 'some factual support'—as opposed to mere allegations—that the potential plaintiffs are similarly situated." Cunha v. Avis Budget Car Rental, LLC, 221 F. Supp. 3d 178, 181 (D. Mass. 2016) (citation omitted). "At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." Montoya v. CRST Expedited, Inc., 311 F. Supp. 3d 411, 420 (D. Mass. 2018) (citation omitted). Then, after discovery is complete, the court makes a final determination as to whether the collective members are similarly situated. Trezvant, 434 F. Supp. 2d at 42. At that point, the court considers factors such as disparate factual and employment settings, various defenses available to the defendant specific to each plaintiff, and fairness and procedural considerations. Id. at 45.

In Hoffman-La Rouche Inc. v. Sperling, the Supreme Court explained that the benefits of a collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." 493 U.S. 165, 170 (1989). Accordingly, once a collective action is filed, the district court "has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." Id. at 170–71. A district court may exercise its discretion by conditionally certifying an action and monitoring preparation and distribution of such notice. Id. at 171–72. "'[C]onditional certification' does not produce a class with an independent legal status, or join additional parties to the action." Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 75 (2013). Instead, "the sole consequence of conditional certification is the sending of court-approved written notice to employees[.]" Id. (citing Hoffmann-La Roche Inc., 493 U.S. at 171–72).

3

### B.      Conditional Certification of Plaintiffs' Collective Action

Plaintiffs contend that conditional certification is appropriate because they "have made a preliminary showing that they and other putative class members were compensated on an hourly basis, filled prescriptions, and were not paid overtime wages for overtime hours worked." Pls.' Mem. at 6 [Doc. No. 45].

Medminder opposes certification. It contends, first, that Plaintiffs have made an insufficient factual showing to support nationwide certification where they have offered no information about employees at Medminder locations other than the one where Plaintiffs worked. Defs.' Opp. at 9–10, 12 [Doc. No. 49]. Second, Medminder argues that Plaintiffs fail to establish a company-wide policy of not paying overtime. Id. at 12–14. Third, Medminder raises factual disputes based on (a) the absence of pay records showing that some Plaintiffs were in fact paid some overtime, and (b) records showing that Leung was classified as an exempt employee. See id. at 11–13, 15.

#### 1.      Scope of Certification Sought

The court begins by addressing the scope of certification. The Motion seeks to authorize notice of the lawsuit to "[a]ll current and former hourly employees of Medminder employed to process prescriptions throughout the country[.]" Mot. at 1 [Doc. No. 44]. Medminder argues that "[w]here Plaintiffs seek conditional certification of a multi-facility or nationwide collective action – as Plaintiffs appear to do here – the factual showing must necessarily be greater" and is insufficient where "based on a limited number of declarations that lack knowledge as to other locations." Defs.' Opp. at 9 [Doc. No. 49]. Medminder also contends that "Plaintiffs' expansive definition of all employees who 'process prescriptions' could be read to include other Medminder employees in other states, including Ohio, who perform entirely different functions

than those performed by Plaintiffs." Id. at 12. On reply, Plaintiffs argue that the cases Medminder cites in support of its argument "are irrelevant, as Medminder operates only one processing facility . . . . In cases involving a single location, courts typically rely on affidavits and pleadings, such as those in this case[.]" Pls.' Reply at 3 [Doc. No. 53]. Plaintiffs also reiterate that their affidavits support their claim that the individuals with job titles of pharmacist and technician perform similar duties. Id.

The court resolves this dispute by clarifying the class definition to reflect the class that Plaintiffs seeks to have conditionally certified: "All current and former hourly employees of Medminder at its Norwood, Massachusetts facility employed as pharmacists or technicians to process prescriptions throughout the country who were not paid one and one-half times their regular hourly rate for hours worked over 40 in at least one workweek between March 6, 2021 and the present."

With this clarification, Medminder's argument that Plaintiffs must make a greater factual showing is unpersuasive. All the cases it cites concern multiple facilities and the failures of plaintiffs to establish information about pay policies at locations other than those where they worked. See Defs.' Opp. at 9–10 & n.6 [Doc. No. 49]. The court in O'Donnell, for example, specifically contrasted the facts before it—where the class "would number in the thousands, would include unidentified individuals in different departments and locations and would involve those working under different management"—with the facts in another case where the "plaintiff sought to certify a 'discrete' class of only 50–100 people" who worked on a single construction job under the same supervisor and the same policy. O'Donnell v. Robert Half Int'l, Inc., 429 F. Supp. 2d 246, 250 (D. Mass. 2006) (citation omitted).

Here, Plaintiffs identify "around 30 pharmacists and 30 technicians" of Medminder who

5

perform similar work to Plaintiffs and have been subjected to a similar policy of being scheduled for more than 40 hours in a workweek but not being paid overtime for the excessive hours. Humphries Decl. ¶¶ 5–6; Trabucco Decl. ¶¶ 5–6; Leung Decl. ¶¶ 5–6 [Doc. No. 45]. That is a "'discrete' class of only [about 60] people" working in a single facility, O'Donnell, 429 F. Supp. 2d at 250, and is sufficient under the "fairly lenient standard" the court applies based on "the minimal evidence available," Trezvant, 434 F. Supp. 2d at 43.

### 2. Defined Policy of Non-Payment

Medminder argues that Plaintiffs have not provided evidence of a "standard nationwide practice with respect to overtime pay" or a "defined policy to not pay overtime." Defs.' Opp. at 13 [Doc. No. 49]. Plaintiffs need only show evidence as to the Norwood, Massachusetts facility. And courts have allowed conditional certification in cases of "a common, unwritten policy," Pearl v. Clearlink Partners, LLC, 546 F. Supp. 3d 32, 36 (D. Mass. 2021), which is what Plaintiffs offer here in their allegations and sworn declarations.

Moreover, the cases Medminder cites are inapposite. In Rios v. Current Carrier Corp., 2015 WL 1443058 (D. Mass. Mar. 30, 2015), for example, "the plaintiffs [said], in effect, they [did] not know what the circumstances of the other employees are." Id. at *2. And Burns v. City of Holyoke, 881 F. Supp. 2d 232 (D. Mass. 2012), concerned "an assorted array of City employees working in different departments," but the plaintiff only offered affidavits from police dispatchers. Id. at 235–36. Importantly, that court distinguished another case that conditionally certified members of different job titles and positions because the plaintiff had "adequately alleged that she and her potential class members performed similar functions and were subject to similar policies." Id. at 235 (quoting Davis v. Footbridge Eng'g Servs., LLC, 2010 U.S. Dist. LEXIS 106523 (D. Mass. Oct. 5, 2010)). Here, too, Plaintiffs have been specific about the

6

functions they performed and attest to knowledge of other employees with the same job titles and job functions subject to the same policy of unpaid overtime.

### 3. Plaintiffs' Pay Records and Employee Status

Medminder next argues that Plaintiffs' own pay records undermine their assertions of a policy to not pay overtime, pointing to heavily redacted pay records that appear to show payments of overtime to Plaintiffs during certain workweeks. See Defs.' Opp. at 13 [Doc. No. 49] (citing Declaration of Jonathan Hatfield ("Hatfield Decl."), Exs. 2, 4 [Doc. Nos. 50-2, 50-4]). As an initial matter, some of the records do not appear to respond to Plaintiffs' specific allegations of the periods of overtime for which they were not paid. Compare, e.g., Hatfield Decl., Ex. 2 (Check Register Report for Humphries for period ending November 18, 2023) [Doc. No. 50-2], with Compl. ¶ 19 (detailing Humphries' daily ten-hour shift during a period in 2024) [Doc. No. 32]. Moreover, that some overtime pay was paid does not by itself rebut the allegation that not all earned overtime pay was paid.

In any event, the court "does not resolve factual disputes . . . or make credibility determinations" at this stage. Montoya, 311 F. Supp. 3d at 420. Medminder's arguments go to individualized damages assessments and "involve fact-intensive inquiries that should not be addressed on this undeveloped record[.]" Roy v. FedEx Ground Package Sys., Inc., 353 F. Supp. 3d 43, 69 (D. Mass. 2018); see also Roberts v. TJX Companies, Inc., 2017 WL 1217114, at *4 (D. Mass. Mar. 31, 2017) ("A more searching assessment of the evidence is appropriate at [a later] stage . . . based on the putative plaintiffs who have actually opted in.").[1]

---

[1] Medminder argues in passing that the "example" ten-hour-day workweeks alleged in the Complaint provide "irrelevant data" because the example dates do not match Medminder's workweek, which runs Sunday through Saturday. Defs.' Opp. at 4, 13 n.10 [Doc. No. 49]. This is another factual dispute inappropriate for resolution at this stage.

Finally, Medminder argues that Leung was salaried for a certain duration of time and thus a potentially exempt employee, meaning the proposed collective improperly combines exempt and non-exempt employees so as to require an individualized inquiry into each employee's actual work activities to determine if they were misclassified. See Defs.' Opp. at 6, 11, 15–16 [Doc. No. 49]; Hatfield Decl., Ex. 6 [Doc. No. 50-6]. This is a strawman argument because, as Medminder acknowledges, "[n]either Plaintiffs' [Complaint] nor Plaintiffs' Motion contain any argument that any employee[s], including Plaintiff Leung, were misclassified." Defs.' Opp. at 15 [Doc. No. 49]. Moreover, Medminder explicitly concedes that Leung was "paid as an hourly employee during the time period from July 2022 to February 2023," which makes her similarly situated to the other non-exempt Plaintiffs during that time. Id. at 11 & n.8; see also Pls.' Reply at 6 n.3 [Doc. No. 53]. As Plaintiffs' Motion makes clear, the proposed collective they seek to notify consists of "current and former hourly employees of Medminder . . . who were not paid one and one-half times their regular hourly rate for hours worked over 40," Mot. at 1 (emphasis added) [Doc. No. 44], which would include claims arising during periods when some individuals were paid on a salary, rather than hourly, basis. The court need not parse individual claims or time periods at this stage.

Accordingly, the court will allow conditional certification of the class as clarified above.

### C.    Plaintiffs' Proposed Notice

The specific content and form of the notice to members of a potential collective is a matter entrusted to the court's discretion. See Hoffmann-La Roche, Inc., 493 U.S. at 170–72. Plaintiffs have included a proposed Notice of Lawsuit and Notice of Consent to be a Party Plaintiff with their motion. See Mot., Ex. 1 [Doc. No. 44]. Medminder "request[s] that the Court allow the parties to meet and confer regarding the content of the notice and consent form and

8

submit a joint proposed form within 15 days of the Court's ruling" on conditional certification, Defs.' Opp. at 17–18 [Doc. No. 49], but this will be unnecessary as Medminder has also raised its specific objections, Plaintiffs have responded, and the court addresses each below.

Medminder challenges Plaintiffs' proposed notice on the following grounds: (1) the notice does not advise potential opt-ins of the possibility that they could be required to pay Medminder's costs; (2) the notice should direct that consent forms be returned to the court or a court designee, rather than Plaintiffs' counsel; (3) Plaintiffs propose needless repetition of the notice through mail, email, text, posting at Medminder's facilities, and a further reminder notice; and (4) Plaintiffs' request for the email addresses and telephone numbers for prospective opt-ins constitutes an unwarranted invasion of privacy. Id. at 17-19. All the cases Medminder cites in support of its arguments are from district courts outside the First Circuit.

As to the advisement of potential costs, "[Medminder] cites no First Circuit authority that requires notice that opt-in plaintiffs may be liable for costs," and courts within the First Circuit have found "there is no need to revise [a] notice to include potential liability for costs" because of "the possibly chilling effect [such] an advisement . . . may have on potential plaintiffs." Roy, 353 F. Supp. 3d at 75; see also, e.g., Darden v. Colbea Enters., L.L.C., 2024 WL 2025769, at *4 (D. Mass. May 7, 2024) (same). Moreover, the proposed notice specifies that Plaintiffs' counsel has agreed to pay any such costs. Pls.' Reply at 10 [Doc. No. 53]; Mot., Ex. 1 ¶ 6 [Doc. No. 44].[2]

As to the return of forms, it is not unusual for opt-in forms to be returned to class counsel, see, e.g., Torrezani v. VIP Auto Detailing, Inc., 2017 WL 2951618, at *2 (D. Mass. May 31,

---

[2] Medminder objects that they are unaware of the nature of any such arrangement, and disclosures about any such arrangements are needed. See Defs.' Opp. at 17 n.11 [Doc. No. 49]. But where the court will make determinations as to any costs due, and Plaintiffs' counsel have made the representation of covering costs in their signed reply brief, the court finds no further disclosures are necessary.

2017) ("Putative Collective Action members shall have 60 days from the date that the FLSA Notice is issued to submit an Opt-In Form to Class Counsel"), and Medminder has offered no explanation for why this is improper.

As to repetition of the notice and concerns about privacy, "'[c]ourts routinely allow notice by e-mail,' and 'also regularly allow plaintiffs to send a reminder notice[.]'" Darden, 2024 WL 2025769, at *5 (D. Mass. May 7, 2024) (quoting Gardner v. Fallon Health & Life Ins. Co., Inc., 2021 WL 4459525, at *4 (D. Mass. Sept. 29, 2021)); see also Romero, 368 F. Supp. 3d at 163 ("email notice . . . is likely to be more effective than alternative methods"). While text messages in some circumstances may be more effective than email in reaching members of the collective, Plaintiffs have not demonstrated any such need here. See Drake v. Tufts Associated Health Maint. Org., Inc., 2021 WL 2767308, at *6 (D. Mass. Feb. 12, 2021) (notice by text message "has the potential to be unduly intrusive, and is not likely to be necessary if notice is also provided by mail and e-mail").

At this juncture, "posting a public notice at [Medminder's facilities] would be unduly prejudicial to [Medminder.]" Darden, 2024 WL 2025769, at *5. Accordingly, the court will allow a 90-day notice to potential members of the collective by first-class mail and email only, with a reminder notice to be sent 45 days prior to the close of the opt-in period.

Finally, the court finds the content of the proposed notice acceptable, where it "includes very little factual material and is a faithful representation of [Plaintiffs'] allegations[,]" Romero, 368 F. Supp. 3d at 163, and is "accurate[] and informative[,]" Hoffmann-La Roche Inc., 493 U.S. 165, 172 (1989).

**III.    Conclusion**

For the foregoing reasons, Plaintiffs' <u>Motion for Step-One Notice</u> [Doc. No. 44] is GRANTED as follows:

1) The court will allow conditional certification of: All current and former hourly employees of Medminder at its Norwood, Massachusetts facility employed as pharmacists or technicians to process prescriptions throughout the country who were not paid one and one-half times their regular hourly rates for hours worked over 40 in at least one workweek between March 6, 2021 and the present.

2) Medminder shall, within 30 days, produce to Plaintiffs the names, last known mailing address, and email addresses for all potential class members.

3) The court approves issuance of Plaintiffs' proposed Notice and Consent to Join Form (provided that the reference to text messages in paragraph 4 is deleted) by first-class mail and email to potential class members.

4) Individuals shall have 90 days from the date of mailing of the Notice and Consent to Join Form to opt in to the collective action. A reminder notice may be sent 45 days prior to the close of that period.

IT IS SO ORDERED.

May 2, 2025                                    /s/ Indira Talwani
                                               United States District Judge